UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------x
:
T-BONE RESTAURANT LLC and STRIP HOUSE  :
LAS VEGAS, LLC,                        :
                                       :
              Plaintiffs,              :
                                       :   12 Civ. 0122
         v.                            :   (BSJ)(HBP)
                                       :
GENERAL ELECTRIC CAPITAL CORPORATION,  :
                                       :   **Order**
              Defendant.               :
--------------------------------------------x
GENERAL ELECTRIC CAPITAL CORPORATION,  :
                                       :
              Counter-claim/ Third-    :
              Party Plaintiff,         :
                                       :
         v.                            :
                                       :
T-BONE RESTAURANT LLC and STRIP        :
HOUSE LAS VEGAS, LLC,                  :
                                       :
              Counter-claim            :
              Defendants,              :
                                       :
              and                      :
                                       :
THE GLAZIER GROUP, INC.,               :
                                       :
              Third-party Defendant.   :
--------------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

T-Bone Restaurant LLC and Strip House Las Vegas, LLC have brought this action for breach of contract against General Electric Capital Corporation ("GECC") alleging that GECC failed to act in good faith and deal fairly with Plaintiffs in connection with negotiations about a forced sale in bankruptcy.

GECC has moved to refer the case to bankruptcy court. For the following reasons, GECC's motion is GRANTED.

## BACKGROUND

### I. The Parties

Until December 6, 2011, Plaintiffs were limited liability companies that owned steakhouse restaurants in New York City and Las Vegas, respectively. Plaintiffs are two of a group of ten steakhouses and catering facilities operating throughout the United States ("Restaurant Affiliates"). In addition to Plaintiffs, the Restaurant Affiliates include Big Bones Limited Partnership, Big Bones Liquor, Inc., Delta Dallas Alpha Corp., Fifth Avenue Ballroom LLC, Mathew Port, LLC, Penny Port, LLC, Strip House Key West, LLC, and Strip House Naples, LLC.

The Glazier Group, Inc. ("GGI") provided restaurant management and support services to the Restaurant Affiliates, which were all wholly owned by members of the Glazier Family, in varying percentages.

GECC is a financial institution that offers commercial loans to expanding businesses.

### II. The Underlying Agreement

Beginning in 2006, the Restaurant Affiliates and GGI embarked on a rapid expansion, and sought to consolidate their debts through financing. GECC provided such financing in the form of a Loan and Security Agreement dated September 19, 2007

2

("Agreement"). Under the Agreement, GGI and the Restaurant Affiliates (together, "Borrowing Entities") were jointly and severally liable as co-borrowers of a $7 million loan ("GECC Loan"). The GECC Loan was secured by substantially all of the assets of the Borrowing Entities, other than real property leasehold interests, and their respective membership interests.

Pursuant to the Agreement, the Borrowing Entities agreed to pay GECC "all reasonable out-of-pocket costs and expenses, including reasonable costs and expenses for legal counsel" in connection with a laundry list of actions, including "the commencement, defense, conduct of, intervention in, or the taking of any other action with respect to any proceeding (including any bankruptcy or insolvency proceeding) related to Borrower, any other Borrower Party, any Loan Document[.]" (Lynch Aff. in Support of Mot. to Refer ("Lynch Aff."), Feb. 13, 2012, Ex. A § 9.4.) Between September 2007 and November 2010, the Borrowing Entities paid down the GECC Loan by roughly $1.2 million.

The Borrowing Entities approached GECC in October 2010 about restructuring the GECC Loan, to no avail. On November 10, 2010, GECC sent a letter to the Borrowing Entities notifying them that an Event of Default existed and that previously outstanding Events of Default remained outstanding since April 9, 2010. (Lynch Aff., Ex. B.) In accordance with the terms of

3

the Agreement, the GECC Loan was immediately accelerated, and the Borrowing Entities were obligated to pay the $5,823,869.05 balance.

### III. GGI Bankruptcy

The acceleration of the GECC Loan caused GGI to file for Chapter 11 bankruptcy in the Bankruptcy Court of the Southern District of New York on November 15, 2010, which action is docketed as No. 10-16099 and presided over by Judge Allan L. Gropper ("GGI Bankruptcy"). On May 3, 2011, GECC filed a Proof of Claim against GGI in the amount of $6,683,907.94 ("GECC Claim"). (Lynch Aff., Ex. C.) On August 16, 2011, GGI's counsel, Herrick, Feinstein LLP, filed an objection seeking an order reducing the GECC Claim on the grounds that GECC had not provided sufficient basis for the fees and expenses it was claiming, which GGI believed were unreasonable. (Def.'s Reply Mem. in Support of Mot. to Refer ("Def.'s Reply Mem."), Mar. 14, 2012, Ex. A.) On September 8, 2011, GGI withdrew its objection to the GECC Claim without explanation. (Def.'s Reply Mem., Ex. B.)

On the same day, GGI submitted its Modified First Amended Plan of Reorganization ("Plan"). (Lynch Aff., Ex. D.) Under the Plan, GGI would be reorganized as Glazier Holdings, LLC ("Glazier Holdings") and each of the Restaurant Affiliates would become wholly-owned subsidiaries of Glazier Holdings. Funding

for the Plan would come from a combination of (1) GGI's operating activities, (2) the contribution of the Glazier Family's membership interests in all of the Restaurant Affiliates to the Reorganized Debtor, and (3) a portion of the proceeds from the sale of Plaintiffs' assets.[1] The remainder of the proceeds from that sale would be utilized to pay the GECC Claim in full, to pay claims against Plaintiffs, and to pay certain claims against other Restaurant Affiliates.

On December 5, 2011, GECC sent a Payoff and Lien Release Letter ("Payoff Letter") notifying the Borrowing Entities of the remaining outstanding obligations under the Agreement. (Lynch Aff., Ex. F.) The Payoff Letter identified a remaining balance of $5,512,239.09, unpaid interest of $463,021.71, and $811,059.20 in fees and expenses incurred by GECC. Payment pursuant to the Payoff Letter was made on December 7, 2011.

Judge Gropper entered an order confirming the Plan on December 13, 2011 ("Confirmation Order"). (Lynch Aff., Ex. E.)

## IV. The Complaint

In the Complaint filed on January 6, 2012, Plaintiffs allege that GECC violated the Agreement's implied covenant of good faith and fair dealing "by acting in furtherance of [its] own interest and intention to force a sale of the restaurants

---

[1] For a more detailed explanation of the sale of Plaintiffs' assets, see infra Background Section IV.

5

owned and operated by Plaintiffs and their co-borrowers to a third party, and in the process charging Plaintiffs excessive, unnecessary and unreasonable fees and expenses." (Compl. ¶ 1.) Plaintiffs claim that even before GGI filed for bankruptcy, it was GECC's intention to cause the Borrowing Entities to default on the GECC Loan so that it could force a sale in bankruptcy of all of the Restaurant Affiliates to Landry's Restaurants, Inc. ("Landry's"). (Compl. ¶¶ 30, 43.)

Following GGI's bankruptcy, the Restaurant Affiliates purposefully sought to avoid filing for bankruptcy so that they could protect their assets from foreclosure by GECC. (Compl. ¶ 33.) Plaintiffs allege that GECC made clear its desire for the Restaurant Affiliates to file for bankruptcy in an e-mail exchange between GECC's Senior Vice President and its Managing Director of Franchise Finance on November 18, 2010, in which the former told the latter that "[GECC is] going to push for a sale." (Compl. ¶ 35.)

To further its forced bankruptcy efforts, GECC allegedly "set out on a campaign to besmirch the Glazier Family and compel the commencement of jointly administered bankruptcy proceedings[.]" (Compl. ¶ 45.) GECC went so far as to seek the appointment of a trustee or examiner to oversee the liquidation of the Restaurant Affiliates' assets in bankruptcy. (Compl. ¶ 46.) In support of that motion for a trustee, GECC commissioned

6

an outside corporate consultant to prepare an expert report that painted a false picture of GGI's cash flow status and falsely suggested that members of the Glazier Family had made significant pre-petition withdrawals from GGI. (Compl. ¶ 47.) GGI and the Restaurant Affiliates then agreed to the appointment of a Chief Restructuring Officer ("CRO") to manage and sell their assets. (Compl. ¶ 51.) The CRO ultimately brought to light the falsehoods in the consultant's expert report. (Compl. ¶ 52.)

Plaintiffs allege that GECC rejected a suggested plan for reorganization that would have allowed the Restaurant Affiliates to avoid bankruptcy, all the while maintaining its commitment to a sale in bankruptcy of all of the Restaurant Affiliates' assets to Landry's. (Compl. ¶¶ 54-65.) In keeping with these efforts, GECC served U.C.C. secured party collateral sale notices upon the Restaurant Affiliates for the sale of their assets and the Glazier Family's membership interests in them ("UCC Sales"). (Compl. ¶ 63.) GECC set up a meeting with GGI, the Restaurant Affiliates, the Glazier Family, the CRO, and Landry's at which Landry's made an offer to purchase three restaurants, including Plaintiffs' restaurants ("Three Restaurants"). (Compl. ¶¶ 67, 69.) At this meeting, Plaintiffs allege that Landry's made clear that if its offer was not accepted, it would partner with GECC and "act as a stalking horse purchaser of the entire

7

enterprise." (Compl. ¶ 69.) Similarly, GECC stated that it would pursue the UCC Sales unless a deal was made with Landry's. (Compl. ¶ 70.)

As a result of the failed negotiations with Landry's and GECC, the Restaurant Affiliates were then forced to sell the same Three Restaurants and the "Strip House" trademark at an undervalued price to a third party identified by the CRO. (Compl. ¶ 72.) Subsequently, one of the Three Restaurants was excluded from the sale, leaving Plaintiffs as the only remaining participants in the asset sale, which closed on December 6, 2011. (Compl. ¶¶ 74-75.) It was in conjunction with this sale of Plaintiffs' assets that GECC issued the Payoff Letter on December 5, 2011. Plaintiffs assert that they notified GECC upon receipt of the Payoff Letter that the "demand for fees, charges and expenses above principal and interest were unreasonable, unnecessary and excessive, and were contested as such by Plaintiffs." (Compl. ¶ 80.) GECC refused to adjust its demand and, because the sale of assets was so crucial to the GGI Bankruptcy, Plaintiffs "paid the full Payoff Amount under protest." (Compl. ¶ 82.)

Plaintiffs assert that GECC's conduct in furtherance of its efforts to force a sale of the Restaurant Affiliates' assets breached the Agreement's implied covenant of good faith and fair dealing and that the fees and expenses incurred as part of the

8

negotiations, i.e. the $811,059.20, "were not in reasonable relation to the collection of the GECC Loan." (Compl. ¶ 89.)

## DISCUSSION

## I.  Legal Principles

District courts are vested with original, non-exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Congress has granted district courts the power to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The General Reference Order, as amended by Chief Judge Preska on January 31, 2012, exercises this power with regard to courts in this District. (Standing Reference Order, No. 12 Misc. 32 (S.D.N.Y. Jan. 31, 2012).) "It is well established that this Order requires referral to the bankruptcy court if the pending case falls within the terms of the General Reference Order and if the bankruptcy court has jurisdiction over the matter." Delcon Constr. Corp. v. Bd. of Educ. of City of Yonkers, N.Y., 299 B.R. 60, 61 (Bankr. S.D.N.Y. 2003) (citing Worldcom Network Servs., Inc. v. Al-Khatib, No. 96 Civ. 4492(RLC), 1998 WL 23254, at *2 (S.D.N.Y. Jan. 22, 1998); Pan Am. Airways, Inc. v. Evergreen Int'l Airlines, Inc., 132 B.R. 4, 6 (Bankr. S.D.N.Y. 1991); Alliance Comm'cns Grp., Inc. v. N. Telecom, Inc., 65 B.R. 581,

585 (Bankr. S.D.N.Y. 1986)). Where these criteria are met, referral to the bankruptcy court is immediate and automatic. Alliance Comm'cns Grp., 65 B.R. at 585.

Under 28 U.S.C. § 157(b)(1), core proceedings are distinguished from non-core proceedings. "[C]ore proceedings and non-core proceedings that are related to title 11 proceedings are within the jurisdiction of the bankruptcy court and can be referred to the bankruptcy judge." Delcon Constr. Corp., 299 B.R. at 61 (quoting Pan Am. Airways, 132 B.R. at 7). Whether a non-core matter "relates to" a Chapter 11 bankruptcy proceeding turns on "whether its outcome might have any 'conceivable effect' on the bankrupt estate." In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992).

Once a reorganization plan has been confirmed, "the bankruptcy court's jurisdiction shrinks." In re Park Ave. Radiologists, P.C., 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011) (quoting In re Gen. Media, Inc., 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005)); see also Cantor v. Am. Banknote Corp., No. 06 Civ. 1392(PAC), 2007 WL 3084966, at *3 (S.D.N.Y. Oct. 22, 2007); Guccione v. Bell, No. 06 Civ. 492(SHS), 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006). In this post-confirmation context, a party seeking referral to the bankruptcy court must establish: (1) that the matter has a close nexus to the bankruptcy plan or proceeding, such as when a matter affects the interpretation,

10

implementation, consummation, execution or administration of the confirmed plan[2], and, (2) that the plan itself provides for retention of the bankruptcy court's jurisdiction over the dispute. Allstate Ins. Co. v. Ace Sec. Corp., No. 11 Civ. 1914(LBS), 2011 WL 3628852, at *4 (S.D.N.Y. Aug. 17, 2011) (internal quotation marks and citation omitted); In re Kassover, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006) (quoting In re Gen. Media, 335 B.R. at 73).

The distinction between core and non-core matters is less important after a plan has been confirmed because even a core proceeding must have some direct effect on the reorganization plan in order to fall within the bankruptcy court's more limited jurisdiction. In re Gen. Media, 335 B.R. at 74. Instead, the

---

[2] The Second Circuit has not yet addressed whether the close nexus test should be applied to determine a bankruptcy court's jurisdiction after a reorganization plan has been confirmed. Several other courts of appeal have found that it does. See, e.g., In re Kirkland, 600 F.3d 310, 317 (4th Cir. 2010); In re Pegasus Gold Corp., 394 F.3d 1189, 1194 (9th Cir. 2005); In re Resorts Int'l, Inc., 372 F.3d 154, 166-67 (3d Cir. 2004). There has been some disagreement among courts in this District about whether the close nexus test should be applied in the post-confirmation context. Indeed, this Court recently declined to adopt the close nexus test in the context of a post-confirmation liquidation. Am. Int'l Grp., Inc. v. Bank of Am. Corp., No. 11 Civ. 6212(BSJ), 2011 WL 6778473, at *4 (S.D.N.Y. Dec. 20, 2011); but see In re Gen. Media, 335 B.R. at 73 (adopting the "close nexus" test after confirmation of reorganization plan). The distinction between liquidation and reorganization seems pertinent to this issue, as more limited jurisdiction over matters where a debtor has been reorganized comports with the general policy objective in reorganization of allowing a debtor to put its debts behind it. See In re Refco, Inc. Sec. Litig., 628 F. Supp 2d 432, 442 (S.D.N.Y. 2008). In any event, the Court need not decide which test is applicable, as GECC has established a sufficiently close relationship between the underlying action and the GGI Bankruptcy to satisfy the more stringent of the two tests.

11

close nexus inquiry requires assessing whether the matter "affect[s] an integral aspect of the bankruptcy process." In re Metro-Goldwyn-Mayer Studios Inc., 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011) (alteration in original) (quoting In re Resorts Int'l., 372 F.3d at 167).

## II. There Is a Close Nexus With the GGI Bankruptcy

Plaintiffs seek damages in the form of unreasonable fees and expenses which equal the amount of fees and expenses demanded in the GECC Claim and allowed by Judge Gropper on the grounds that this lawsuit exists wholly outside the bankruptcy context. To support this assertion, Plaintiffs contend that "[they] sold their assets in a private transaction, and used the proceeds of that sale to pay off the GECC Loan in full outside the purview and jurisdiction of the Bankruptcy Court," and that "GECC did not receive any distribution pursuant to GGI's plan of reorganization[.]" (Pls.' Mem. in Opp. to Mot. to Refer, Mar. 7, 2012, 1.) This is nothing more than a transparent attempt to circumvent the confirmation of fees and expenses with which Plaintiffs disagree. For reasons not explained to the Court, Plaintiffs chose to withdraw their original objection to the reasonableness of GECC's claimed fees and expenses, and they now attempt to challenge the same fees and expenses before a different judge. Despite Plaintiffs' best efforts, however, the

12

business dealings with GECC which form the basis for the instant action cannot be disentangled from the GGI Bankruptcy.

The GECC Claim totaled roughly $1 million dollars, $811,059.20 of which represented fees and expenses incurred in connection with the GGI Bankruptcy. The sale of Plaintiffs' assets provided the cash that funded the Plan. The outcome of this action clearly would affect an integral part of the Plan. Accordingly, the Court finds that the subject of this action has a close nexus to the GGI Bankruptcy.[3]

### III. The Plan Provides for the Retention of Bankruptcy Court Jurisdiction Over This Dispute

The second requirement for post-confirmation bankruptcy court jurisdiction is satisfied, as well. Notably, the Plan and the Confirmation Order provide for the retention of bankruptcy court jurisdiction that is as expansive as ordinary pre-confirmation jurisdiction. (See Lynch Aff., Ex. D § 12.1 ("Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have

---

[3] In further support of the interrelatedness of this action to the GGI Bankruptcy, GECC points to the co-borrower relationship between Plaintiffs and GGI under the Agreement and the possibility that, should GECC incur additional fees and expenses as a result of this action, GGI could ultimately be liable for payment thereof. (Def.'s Mem. in Support of Mot. to Refer, Feb. 13, 2012, 2.) Judge Gropper recognized this possibility, however distant, when he ordered Plaintiffs to deposit $100,000 in an escrow account to provide some insurance to GECC in the event that it is owed additional fees and expenses. (Lynch Aff., Ex. J.) The Court need not consider this argument, as this additional connection is not essential to the Court's conclusion that there is a close nexus between this action and the GGI Bankruptcy.

jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and this Plan[.]"); Lynch Aff., Ex. E. ¶ 22 (same).) Having already determined that this action has a close nexus to the GGI Bankruptcy and is therefore appropriate for referral in the post-confirmation context, the same certainly qualifies under the broader bankruptcy court jurisdiction provided for in the Plan.[4]

**IV. Judicial Economy Also Supports Referral**

Although insufficient, standing alone, to warrant referral to the bankruptcy court, the interests of judicial economy are among the factors to be considered by courts deciding referral motions. Fed. Ins. Co. v. Sheldon, 167 B.R. 15, 21 (Bankr. S.D.N.Y. 1994) (citing In re Kenai Corp., 136 B.R. 59, 61 (Bankr. S.D.N.Y. 1992); Unique Catering Inc. v. Am. Broadcasting Cos., Inc., 49 B.R. 367 (Bankr. S.D.N.Y. 1985)).

Judge Gropper has presided over the entire GGI Bankruptcy and has acquired intimate knowledge of, inter alia, the events leading up to GGI's bankruptcy petition as well as the events surrounding the sale of Plaintiffs' assets. He has dealt directly with all of the relevant parties and their counsel

---

[4] Since the filing of GECC's motion for referral, Judge Gropper entered a Final Decree closing the GGI Bankruptcy. (Final Decree at 1, In re Glazier Grp., Inc., No. 10-16099(ALG) (Bankr. S.D.N.Y. Mar. 28, 2012) ECF No. 291.) That the GGI Bankruptcy is now closed has no bearing on the Court's decision, as the Final Decree carved out "the Court's continued jurisdiction with respect to such matters as may be prescribed under the Plan [or] the order confirming the Plan dated December 13, 2011[.]" (Id.)

14

regarding a host of substantive disputes in the GGI Bankruptcy. Perhaps most relevant, Judge Gropper entered the Confirmation Order that provided for full payment of the GECC Claim, which is at the heart of this action. Judge Gropper is in a much better position than this Court to assess the issues related to fees and expenses incurred by GECC in the course of the GGI Bankruptcy, as this Court's involvement with this action has been limited to the disposition of this motion only. It would be utterly inefficient for a district court with no familiarity with the underlying facts to preside over an action that is so closely connected to the Plan. Accordingly, it is prudent to refer this action to the bankruptcy court.

## CONCLUSION

For these reasons, Defendant's motion to refer this action to the Bankruptcy Court in the Southern District of New York is GRANTED. Accordingly, the Court will not consider the motion to dismiss Defendant's counter-claim and third-party complaint. The Clerk of the Court is directed to terminate these motions (Dkt. 6 & 16) and to close this case.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         August 16, 2012