**UNITED STATES BANKRUPTCY COURT**  NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                                     :
                                                                              :   Chapter 11
THE GLAZIER GROUP, INC.,                            :
                                                                              :   Case No. 10-16099 (ALG)
                                         Debtor.              :
                                                                              :
-------------------------------------------------------------x
T-BONE RESTAURANT LLC and STRIP    :
HOUSE LAS VEGAS, LLC,                            :
                                                                              :   Adv. Pro. No. 12-1878
                                         Plaintiffs,          :
                                                                              :
            vs.                                                         :
                                                                              :
GENERAL ELECTRIC CAPITAL                    :
CORPORATION,                                                :
                                                                              :
                                         Defendant.      :
-------------------------------------------------------------x
GENERAL ELECTRIC CAPITAL                    :
CORPORATION,                                                :
                                                                              :
                                         Counterclaim/Third-  :
                                         Party Plaintiff,    :
                                                                              :
            vs.                                                         :
                                                                              :
T-BONE RESTAURANT LLC and STRIP    :
HOUSE LAS VEGAS, LLC,                            :
                                                                              :
                                         Counterclaim      :
                                         Defendants,        :
     -and-                                                              :
                                                                              :
THE GLAZIER GROUP, INC.,                            :
                                                                              :
                                         Third-Party         :
                                         Defendant.        :
-------------------------------------------------------------x

## **MEMORANDUM OF DECISION**

A P P E A R A N C E S:

HERRICK FEINSTEIN LLP
*Counsel for Plaintiffs, Counterclaim Defendants and Third-Party Defendant*
    By:  William R. Fried, Esq.
          Justin B. Singer, Esq.
2 Park Avenue
New York, New York 10016

REED SMITH LLP
*Counsel for Defendant and Third-Party Plaintiff*
    By:  Christopher A. Lynch, Esq.
          Alexander Terras, Esq.
599 Lexington Avenue, 22nd Floor
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are proceedings regarding the attorneys' fees and expenses claimed by General Electric Capital Corporation ("GECC") pursuant to a Loan and Security Agreement, dated September 19, 2007, (the "Loan Agreement") with the Plaintiffs, T-Bone Restaurant LLC and Strip House Las Vegas, LLC ("Plaintiffs"), and several of their affiliates, including the debtor, The Glazier Group, Inc. (the "Debtor").

On November 30, 2012, this Court denied Plaintiffs' motion to dismiss GECC's counterclaim and third-party complaint, which seeks additional fees and expenses that GECC asserts it will be entitled to for litigating these proceedings. *In re Glazier Group Inc.*, 2012 WL 6005764 (Bankr. S.D.N.Y. Nov. 30, 2012). The parties thereafter agreed to submit evidence on the question of the reasonableness of GECC's professional fees and expenses up to the date of confirmation of the Debtor's plan by affidavit and brief, as well as the testimony of one witness, David A. Burger of GECC. Mr. Burger testified on March 26, 2013, and the parties submitted extensive papers.

2

Based on the record and for the reasons set forth below, the Court enters the following findings of fact and conclusions of law, determining that GECC is entitled to all of its pre-confirmation fees and expenses in the amount of $701,922.21.

**Background**

The background of this decision is discussed in this Court's Memorandum, dated November 30, 2012. In brief, Plaintiffs were well-known restaurants that, along with seven other restaurants, were all directly owned by Peter Glazier and members of his family. The Glazier family also owned the Debtor, which had no substantial assets of its own and acted as a management company for the restaurants. In 2007, Plaintiffs and the Debtor, along with the other restaurants (the "Borrowers"), obtained a $7 million loan from GECC pursuant to the Loan Agreement, under which they were jointly and severally liable as co-borrowers. The Loan Agreement was secured by all of the borrowing entities' assets, excluding real property leasehold interests. Peter Glazier also pledged his respective stock or membership interests in the restaurants.

The Borrowers paid down about $1.2 million of the loan prior to falling into default. Effective May 12, 2009, GECC entered into a Loan Modification Agreement with the Borrowers, providing for six months of interest-only payments and full payment of the remaining balance upon maturity. Following this forbearance period, loan workout negotiations between GECC and Borrowers ultimately failed. By letter dated November 10, 2010, GECC notified the Borrowers of an Event of Default under the Loan Agreement and accelerated all obligations under that Agreement. In response, the Debtor management company, but not the restaurants, filed for bankruptcy under chapter 11 on November 15, 2010. (*See* Voluntary Petition, Case No. 10-16099, Docket No. 71.)

GECC was actively involved in the subsequent bankruptcy proceedings.  GECC hired the law firm of Reed Smith LLP as counsel and John J. Kokoska of BDO Consulting Corporate Advisors, LLC as financial advisor.  GECC appeared at the first-day hearing on November 18, 2010, at which a consent order was entered that authorized Debtor's use of GECC's cash collateral and provided monthly adequate protection payments to GECC in the amount of $5,000.00.  (*See* Interim Order Authorizing Use of Cash Collateral, Case No. 10-16099, Docket No. 18.)  On December 29, 2010, GECC filed a motion to appoint a chapter 11 trustee or examiner, and on February 16, 2011, after hearing testimony from Peter Glazier, the Court approved the retention of John Dunne of Renewal Ventures, LLC as Chief Restructuring Officer (the "CRO").  (*See* Order Authorizing the Debtor's Employment and Retention of John Dunne of Renewal Ventures, LLC, Case No. 10-16099, Docket No. 71.)

A creditors' committee (the "Committee") was appointed on January 14, 2011.  (*See* Appointment of Official Creditors' Committee, Case No. 10-16099, Docket No. 48.)  As the case progressed, an additional nine interim cash collateral orders were entered, providing for the Borrowers' continued use of GECC's cash collateral and providing GECC with adequate protection through a post-petition claim against Debtor's estate, a replacement lien on Debtor's property, and increased adequate protection payments in the amount of $29,653.00 per month.  (*See* Interim Order Authorizing Use of Cash Collateral, Case No. 10-16099, Docket No. 69; Interim Order Authorizing Use of Cash Collateral, Case No. 10-16099, Docket No. 81.)

On March 1, 2011, the Debtor filed a motion (the "Motion") seeking an extension of its exclusive period to file a plan of reorganization.  *See* Bankruptcy Code § 1121(d).  Both GECC and the Committee separately objected to the Motion.  On April 1, 2011, a hearing was held regarding the Motion, and the Court entered an order providing that GECC and the Committee

4

would jointly have the right to file a plan and solicit acceptances and requiring the Debtor and the CRO to provide GECC and the Committee with their full cooperation.  (*See* Order Dated Apr. 6, 2011, Case No. 10-16099, Docket No. 108.)  In the Court's view, this order and the prospect of a creditors' plan led directly to the Debtor's filing of a negotiated plan on July 12, 2011.  (*See* First Plan of Reorganization of The Glazier Group, Case No. 10-16099, Docket No. 138-1.)

On September 15, 2011, Debtor filed its Modified First Amended Plan of Reorganization (the "Plan"); it provided for the sale of three of the restaurants in the group, to accrue sufficient funds to pay off GECC's claim in its entirety and provide a return to unsecured creditors.  (*See* Amended Plan, Case No. 10-16099, Docket No. 176.)  The plan was accepted by all voting classes of creditors and confirmed on December 13, 2011.  (*See* Order Confirming Modified First Amended Plan of Reorganization, Case No. 10-16099, Docket No. 258-1.)

GECC submitted a final payoff letter on December 5, 2011 identifying a balance of $6,786,320.00, which included $811,059.20 in fees and expenses.  Fees and expenses included $108,637.20 in late charges and a $500 processing fee, to which Plaintiffs did not object.  Plaintiffs objected to the remaining amount, which was for attorneys' fees and expenses.  So as not to delay a closing, the attorneys' fees and expenses were paid under protest and with a reservation of the Borrowers' right to contest the amount in court.  Plaintiffs initially filed their complaint seeking a declaration that the fees were unreasonable in the District Court for the Southern District of New York (the "District Court").  They specifically objected to $466,943.00 in legal fees and $36,909.38 in expenses for Reed Smith LLP, $162,828.18 in BDO fees and expenses, $17,534.86 for a first internal audit exam, and $17,706.79 for a second internal audit exam. (*See* Trial Memorandum of Law at pp. 12-13, Adv. Pro. No. 12-1878, Docket No. 8.)

5

The District Court referred the dispute to this Court by decision and order dated August 16, 2012. That decision held that referral was appropriate and that this Court had jurisdiction to decide the matter. (*See* Order dated August 16, 2012 of Hon. Barbara S. Jones in 12 Civ. 0122 (S.D.N.Y.).)

## Discussion

Section 506(b) of the Bankruptcy Code provides for the payment to oversecured creditors of "any reasonable fees, costs, or charges provided under the agreement under which such claim arose." *See Matter of Nicfur-Cruz Realty Corp.*, 50 B.R. 162, 164 (Bankr. S.D.N.Y. 1985), quoting 11 U.S.C. § 506(b). To recover under § 506(b), a party must establish: "(1) that its claim is over-secured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorneys' fees." *In re Enron Corp.,* 306 B.R. 33, 43 (S.D.N.Y. 2004) *aff'd sub nom. Enter. Prods. Operating L.P. v. Enron Gas Liquids Inc.*, 119 Fed. Appx. 344 (2d Cir. 2005). The parties do not dispute that GECC was oversecured and that it is entitled to pre-confirmation attorneys' fees and expenses pursuant to the Loan Agreement. The only matter in dispute is the reasonableness of GECC's attorneys' fees and expenses under § 506(b).

The reasonableness of fees and expenses ultimately depends on the particular facts and circumstances of a case. *In re Amherst Orthopedic Assocs., P.C.*, 355 B.R. 420, 422 (Bankr. W.D.N.Y. 2006). The underlying contract serves as the initial focal point, *In re Wonder Corp. of Am.*, 72 B.R. 580, 588 (Bankr. D. Conn. 1987), but courts must also consider reasonableness within the general policies and provisions of the Bankruptcy Code, and bankruptcy courts have inherent discretion to review fee claims for potential abuse. *Id.; In re Mills*, 77 B.R. 413, 419 (Bankr. S.D.N.Y. 1987); *Nicfur-Cruz Realty Corp.*, 50 B.R. at 167. In doing so, courts attempt

to "determine whether the creditor reasonably believed the services were necessary to protect its interest in the debtor's property." *In re PCH Assocs.*, 122 B.R. 181, 204 (Bankr. S.D.N.Y. 1990); *see also In re Vest Assocs.*, 217 B.R. 696, 700-701 (Bankr. S.D.N.Y. 1998).

Plaintiffs argue that GECC should not be reimbursed for its legal fees and expenses because its secured position was never objectively in jeopardy, and it did not need to police the case at all. There is no question that GECC may recover only such fees "as were reasonably necessary to enforce the debtor's obligations and to collect the amount remaining due pursuant to those obligations." *In re Cont'l Vending Mach. Corp.*, 543 F.2d 986, 994 (2d Cir. 1976). As Plaintiffs argue, this does not provide a secured creditor a "blank check" to accrue fees and expenses, and it only provides for reimbursement of reasonably necessary fees in connection with a chapter 11 proceeding. *In re Scarlet Hotels, LLC*, 392 B.R. 698, 702 (B.A.P. 6th Cir. 2008). Thus, GECC cannot recover "for services that were unnecessary or unconnected with enforcement or collection of the indebtedness . . . or services that had little or no chance of achieving the objective of payment." *Cont'l Vending Mach. Corp.*, 543 F.2d at 994. Further, as Plaintiffs assert, the reasonableness of counsel's activities in representing a secured creditor may depend on the extent to which "the creditor's secured position is jeopardized." *Amherst Orthopedic Assocs.,* 355 B.R. at 424. Where a creditor is oversecured, "[t]he size of a creditor's equity cushion is an underlying factor in the reasonableness determination." *Id.* at 423. When there is only minimal risk, "circumstances will generally require that counsel respond only to issues of material concern. . . ." *Id*. at 424. Further, fees may be disallowed where they are the result of "unreasonably excessive duplication and a determined effort to frustrate the bankruptcy proceedings." *In re Wonder Corp. of Am.*, 82 B.R. 186, 192 (D. Conn. 1988).

7

Plaintiffs assert that the application of these principles would lead to the disallowance of all of GECC's fees. In essence, Plaintiffs argue, GECC was vastly oversecured at all times and merely had to wait for the sale of one or more of the restaurants to collect on its loan. Plaintiffs' retrospective view of the case has no basis in fact, and if GECC had merely waited for a sale, it might still be waiting. In fact, if the sale of one or more of the restaurants was such a simple matter, as Plaintiffs now assert, Mr. Glazier should have been able to arrange the sale outside of a bankruptcy case, and the entire chapter 11 filing was a waste of resources.[1]

In fact, this chapter 11 case was filed because Mr. Glazier was determined to hold on to the restaurants that he had built up over the years, not to sell any of them, and chapter 11 gave him an opportunity to pursue this strategy. A sale was not mentioned in the papers filed by the Debtor early in the case. When Mr. Glazier took the stand on January 28, 2011, he did not mention the possibility of a sale.[2] Instead, the sale came about only after GECC and the Committee put enough pressure on the Debtor to force it. As noted above, GECC and the Committee both filed objections to the Debtor's motion to extend its exclusivity period under § 1121 of the Code, and the Court sustained their objections by giving them the joint right to file one. (*See* Order Dated Apr. 6, 2011, Case No. 10-16099, Docket No. 108.) The Committee's dim view of the Debtor's administration of its chapter 11 case was stated in its objection to exclusivity, dated March 25, 2011. As the Committee said: "the Debtor's strategy is to favor management's desire to protect its interests rather than considering a fair sale process" and "unless this Court permits a fair and open sale process, the value of the Debtor's assets will be

---

[1] This would raise the question why the Debtor paid its counsel for an unnecessary proceeding. Fees and expenses of Debtor's bankruptcy counsel were paid in the amount of $861,055.52. The Debtor also paid fees and expenses of $268,032.61 to counsel for the Creditor's Committee.

[2] It is worth recalling the degree of control that Mr. Glazier asserted over the Debtor and all of the restaurants. At this same hearing, Peter Glazier was unclear as to even the amounts of his own salary and personal withdrawals from the company, estimating they could have been anywhere between "three and four or 500,000 dollars." (*See* Transcript of Feb. 1, 2011 Hearing at p. 90, Case No. 10-16099, Docket No. 83.) After this hearing a CRO was appointed, but he did not have unlimited power to force a sale.

8

put into jeopardy and the interests of creditors will be compromised." (*See* Objection of Official Committee of Unsecured Creditors at pp. 4, 6, Case No. 10-16099, Docket No. 99.)

At the time of the exclusivity hearing, GECC was also putting pressure on the Debtor by preparing to enforce its lien on the stock owned by Peter Glazier, a non-debtor, and on the assets of the operating restaurants, also non-debtors. During the exclusivity hearing held in this Court on April 1, 2011, Debtor's counsel said they did not believe that GECC would attempt to foreclose on the affiliates, but they were prepared to request relief under § 105 of the Bankruptcy Code to extend the automatic stay and enjoin all actions against non-debtor affiliates.[3] (*See* Transcript of Apr. 1, 2011 Hearing at p. 19, Case No. 10-16099, Docket No. 107.) This incident is probative of the real course of the bankruptcy case in two respects. First, it indicates the extent of the Debtor's resistance to action that it now claims was the obvious solution to its economic distress, a sale of one or more of the restaurants. Second, it establishes that GECC acted with restraint. GECC did not respond to the Debtor's chapter 11 filing by taking immediate enforcement action against non-debtors, which might have forced additional bankruptcies to the disadvantage of the unsecured creditors and the non-debtors alike. GECC's restraint is now viewed by the Plaintiffs as causing unnecessary attorneys' fees, but it actually saved the additional accrual of costs and economic dislocation.

Plaintiffs also allege that GECC misled the Court in connection with an expert report, dated January 6, 2011, which took the position that GECC was not adequately protected even though the expert valued the enterprise in excess of GECC's claim. Under the circumstances, while GECC may have been adequately collateralized, this report's conclusion that GECC was no longer adequately protected was not unreasonable. The Report concluded that the enterprise's

---

[3] It was not until a binding term sheet had been entered into for the sale of three affiliate restaurants that Plaintiffs informed this Court they would not be pursuing § 105 relief.

9

cash flow would be insufficient to sustain operations after taking into account the mismanagement of the companies, the extent of the Borrowers' obligations, the nature of the collateral securing GECC's claim, and the need to ensure that the estate's assets were not depleted.

In sum, GECC was justified in advocating and attempting to force a sale, and it acted rationally and with due consideration of other creditors and equity holders. Plaintiffs have not suggested any manner in which a plan could have been confirmed, other than a sale, and their assertion that a sale was inevitable does not answer the fact that GECC and the Committee had to overcome the Debtor's strenuous opposition to the inevitable.

Therefore, the work performed and expenses incurred by GECC's attorneys and advisors reasonably related to ensuring payment under the Loan Agreement, and these fees and expenses may be recovered as they were "reasonably necessary to enforce the debtor's obligations and to collect the amount remaining due pursuant to those obligations." *Cont'l Vending Mach. Corp.*, 543 F.2d at 994. Moreover, it is noteworthy that Reed Smith, GECC's counsel, billed throughout the case at a vastly discounted rate of $300 per hour. This compares to rates of up to $950 per hour charged by Debtor's counsel and was a bargain. GECC's expenses for the fees of its investment advisor and for the interim audits, and Reed Smith's expenses, have not been shown to be unreasonable. Plaintiffs have also failed to specify any duplicative efforts or failure to appropriately document work on the part of GECC. GECC is entitled to all of its fees and expenses.

## Conclusion

For the foregoing reasons, GECC may settle an order on counsel for Plaintiffs and Third-Party Defendants ratifying the payment that was made in the Plan of Reorganization of GECC's

10

fees and expenses incurred during the course of the bankruptcy proceedings and providing for dismissal of the complaint.  As noted above, GECC also has sought its fees and expenses in connection with defending this action in its third-party complaint and counterclaims, and the Debtor has escrowed certain sums for the payment of such fees and expenses, if awarded.  GECC has 14 days from the date of this Decision to submit a detailed application seeking fees and expenses relating to this proceeding, Plaintiffs and the Debtor have 14 days to respond, and GECC may have 10 days to reply, if necessary.  Any of the parties may request a hearing; however, if a hearing is not requested, the Court will enter an appropriate amount on the papers.

Dated: New York, New York
      May 2, 2013

                                        **s/Allan L. Gropper**
                                        UNITED STATES BANKRUPTCY JUDGE